**EXECUTIVE SERVICES OF MIAMI, INC., a Florida Corporation, Plaintiff,**

v.

**SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY et al., a foreign corporation, Defendants.**

**No. 81–906–CIV–EPS.**

United States District Court, S.D. Florida, Miami Division.

May 13, 1981.

Thomas G. Sherman, Miami, Fla., for plaintiff.

John T. Kolinski, Shutts & Bowen, Miami, Fla., for defendants.

MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

SPELLMAN, District Judge.

On April 20, 1981, Plaintiff filed a six count complaint against the Defendant, Southern Bell Telephone and Telegraph Company (hereinafter "Southern Bell") in the Eleventh Judicial Circuit Court in and for Dade County. On April 23, 1981, Southern Bell petitioned this Court to remove the action from state court and, on April 27, 1981, this Court granted said petition based on the provisions of 28 U.S.C. § 1441(b). The cause is presently before the Court on Plaintiff's motion for a preliminary injunction.

Plaintiff operates, under various fictitious names, a number of "escort services" in the South Florida area. The complaint states, *inter alia*, that:

> for the 1981–82 yellow pages, [Southern Bell] will not accept any advertisements with company names which include a term which refers to the male or female gender including names with the term "lady", "playfirl" (sic), "angel", and "venus". In addition, the Defendant has set other arbitrary and capricious prohibitions for the Plaintiff's business, which include on some unknown basis a refusal to advertise trade names with such phrases as "Dreams Unlimited", "Star Times", "Good Times", "Sun Times", "Smashing

Beauties", "All American", "Rent-A", among others. Said policies apply only to Plaintiff, or others in the same business.

Plaintiff has requested this Court to "issue a preliminary injunction requiring Defendant to treat Plaintiff's request for advertisement in a non-discriminatory and reasonable manner forthwith, and to publish Plaintiff's requests for advertisement under their lawful trade names, in their proper category of escort services, and in accord with reasonable regulations as to content as this Court may deem appropriate."

The four prerequisites for granting a preliminary injunction are as follows:

1. A substantial likelihood that Plaintiff will prevail on the merits;

2. A substantial likelihood that Plaintiff will suffer irreparable injury if the injunction is not granted;

3. That the threatened injury to Plaintiff outweighs the threatened harm the injunction may do to the Defendant; and

4. That granting the preliminary injunction will not disserve the public interest.

*Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974). Upon review of the facts in this case, the Court is of the opinion that the weight of the aforementioned factors support denial of Plaintiff's motion.

Plaintiff seeks injunctive relief in Counts I and II of the Complaint.[1] Count I alleges that the aforementioned acts of the Defendant constitute a violation of section 364.10 of the Florida Statutes. Section 364.10 provides:

No telephone company shall make or give any undue or unreasonable preference or advantage to any person or locale, or subject any person or locale to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

In attempting to determine whether Plaintiff has a substantial likelihood of prevailing on the merits of Count I, this Court had to ascertain whether Plaintiff's complaint stated a claim under section 364.10.[2] Although this Court was unable to find any Florida cases that dealt with the specific issue here raised, there are two cases that shed light on this issue. The Florida Railroad and Public Utilities Commission opinion in *Re Southern Bell Telephone and Telegraph Co.*, 41 PUR3d 401 (1961) was issued following a hearing on a proposal for new exchange groupings and rates. The opinion notes that the only people who showed for the hearing were there to make protests "directed primarily at the telephone company's yellow page directory advertising policies and practices. The commission disallowed these protests on the basis of court decisions holding that yellow page advertising is not a public utility function of the telephone company, and, therefore, is not subject to control and supervision by a commission such as this." The commission's ruling is supported by a decision of the Eleventh Judicial Circuit Court in and for Dade County, Florida, wherein it was stated:

[T]he yellow pages appendix to defendant's directory is merely an advertising media in the publication [in] which the defendant does not perform an essential public service subject to public regulation or which is within the ambit of chapter

---

1. Although Count VI also requests an injunction, it really amounts to nothing more that a prayer for relief based on the allegations previously set forth in the complaint. Counts III, IV, and V are claims for damages based on alleged past and present breaches of contracts, both express and implied in fact, and for tortious interference with Plaintiff's business. These counts are strictly actions at law and do not contain prayers for equitable relief.

2. The Court notes that there is a question as to whether Plaintiff's claim for declaratory relief

should be brought in the courts or before the Public Service Commission. *See* Fla.Stat. 364.-01; *Southern Bell Telephone and Telegraph Co. v. Mobile America Corporation, Inc.*, 291 So.2d 199 (Fla.1974). The Court finds, however, that it has the authority to rule on Plaintiff's motion for a preliminary injunction and that it is unnecessary to rule at this time on whether the request for declaratory relief would be more proper in another forum. *See generally State of Alabama v. United States*, 304 F.2d 583, 590 (5th Cir. 1962).

363, Florida Stats. *Florida ex rel. Montemarano v. Southern Bell Teleph. & Teleg. Co.*, (Fla.Cir.Ct. 1950) 87 PUR NS 87, and cases cited therein.

*Horn v. Southern Bell Telephone and Telegraph Co.*, 43 PUR3d 239, 240 (1962).

The rationale for these decisions was neatly summarized by Judge J. Skelly Wright in *The Classified Directory Subscribers Ass'n v. Public Service Commission of the District of Columbia*, 383 F.2d 510, 513 (D.C.Cir.1967) when he stated:

> The Telephone Company certainly is in a uniquely advantageous position as a publisher of directory advertising. But its monopoly in that capacity is not so strong as the one it holds as the exclusive provider of telephone services. Even if no one else has yet found it profitable to publish a competitive directory, certainly the availability of other advertising media does exert some competitive restraining influence on Telephone Company pricing. Thus the distinction which the Commission drew between the classified listing, as an integral part of telephone service, and the directory advertising, as primarily a matter of private contract, was not without some reasonable basis.

Based on the above-cited authorities, the Court has concluded that Plaintiff does not have a substantial likelihood of prevailing on the merits of Count I.

Count II alleges, based on Defendant's status as a public utility and the "grant of monopoly and enfranchisement of the State of Florida," that the aforementioned acts of Southern Bell constitute a violation of 42 U.S.C. § 1983. It is the opinion of this Court, however, that Plaintiff has not stated a claim under section 1983. A cursory examination of Count II shows that there are no allegations that Defendant's actions were made under color of any statute, ordinance or regulation. In addition, it is the view of the Court that even if such allegations were made that Count II would fail to state a claim under section 1983 based on the Supreme Court's decision in *Jackson v. Metropolitan Edison*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Thus, there is no substantial likelihood that Plaintiff will prevail on the merits of Count II.

Plaintiff's allegations of irreparable injury appear to be similarly without merit. As Judge Wright pointed out, there are numerous means to advertise one's business other than in Southern Bell Telephone's yellow pages.[3] Moreover, Defendant has represented to the Court that, although it will not accept advertisements for any escort services, "Southern Bell has *never* refused to list the escort services of plaintiff or anyone else in its Yellow Pages. It has only refused to list certain trade names which it deems suggestive or offensive..." The Court is certain that Plaintiff will be able to find some trade names that will be acceptable to Defendant and does not feel compelled to require Southern Bell to provide Plaintiff with guidelines before Plaintiff submits additional names. Such a requirement is particularly inappropriate here because the names Defendant has refused to list are not Plaintiff's corporate name, that the Secretary of State has approved as being consistent with the public's standards, rather, they are merely fictitious names under which Plaintiff has elected to do business. This Court does not believe that Plaintiff is entitled to invent a name under which it desires to do business and to compel Defendant to accept that name, no matter how offensive it may be, for a publication where Plaintiff's advertisements are run, not as a matter of right, but based on a contractual relationship that has not even been established for the 1981–82 period.

In light of the foregoing, it is unnecessary to elaborate extensively on the remaining prerequisites for granting a preliminary injunction. Suffice it to say that the injury to plaintiff if the injunction is not granted

---

**3.** Although the Court recognizes that many of Plaintiff's prospective clients might want to avail themselves of its services while "walking through the Yellow Pages", the affidavit in support of Defendant's memorandum in opposition to the motion for a preliminary injunction lists a number of trade directories covering the Dade and Broward County areas that are likewise available to Plaintiff.

is speculative at best[4] and it does not appear to outweigh the harm the Defendant will incur if this Court requires them to delay publication of the yellow pages while Plaintiff comes up with acceptable trade names or to publish the trade names as they currently are. Such an injunction would, in the Court's view, be a disservice to the public interest. Accordingly, the Plaintiff's motion for a preliminary injunction is DENIED.

---

4. Especially in light of Southern Bell's representation that they will list trade names for Plaintiff's businesses if they are not suggestive or offensive.